IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00106-CV

 

In the
Matter of the Marriage of 

Amanda
Renee Hicks and Ryan OlIVer Hicks 

and in
the Interest of K.O.H., a Child

 

 

 

 



From the 85th District Court

Brazos County, Texas

Trial Court No. 07-002607-CVD-85

 



MEMORANDUM  Opinion



 








            Appellant has filed a motion to “voluntarily withdraw [his]
appeal.”  Appellee has not filed a response.  Accordingly, the appeal is
dismissed.  See Tex. R. App. P. 42.1(a)(1).

PER CURIAM

 

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Appeal dismissed

Opinion delivered and
filed August 6, 2008

[CV06]








 






:"Palatino","serif"'>The Evidence

            C.W.L. was a middle school student. 
L.B., a fellow student, testified that on the morning of May 25, 2007, he,
C.W.L. and two other students were sitting at a table in the school cafeteria
when C.W.L. took four light blue pills from his wallet.  The pills were not in
a prescription bottle, but C.W.L. said the pills were his prescribed ADHD
medicine.  C.W.L. offered to sell him two of the pills for one dollar, but he
did not buy the pills.  C.W.L. nevertheless gave him two of the pills but never
told him why he would want the pills.  L.B. also said that during the time he
was talking to C.W.L., C.W.L. took one of the pills.

            L.B. testified that in the
meantime, another student who was sitting at the table went to the office to
“tell on” C.W.L.  Subsequently, Margaret Wright, a teacher’s aide at the
school, came into the cafeteria and told C.W.L. to come to the office, which he
did.  L.B. testified that Ms. Fernandez, the behavior specialist at the school
who also “runs the cafeteria” from 7:30 a.m. to 8:45 a.m. each morning, then
came to get C.W.L.’s “stuff.”  When Ms. Fernandez picked up C.W.L.’s bag, a
pill that was on top of the bag fell onto the ground.  L.B. then gave Ms.
Fernandez the pills C.W.L. had given to him and told her that C.W.L. had given
him the pills.  Ms. Fernandez then took C.W.L.’s bag and the pills and left.

            C.S., another student,
testified that he was also sitting at the cafeteria table when C.W.L. offered
to sell some pills to L.B.  C.S. said that C.W.L. had approximately four or
five blue capsules in a little plastic bag, and he “told everybody at the table
that they were his ADHD pills.”  C.W.L. gave L.B. one of the pills and L.B. put
the pill in his pocket.  C.S. testified that he does not know what effect an
ADHD pill would have on someone who does not have ADHD.  L.B. then gave the
pill to Ms. Fernandez when she came to the table.  Contrary to L.B.’s
testimony, C.S. testified that C.W.L. was still at the table when L.B. gave the
pill to Ms. Fernandez, and C.W.L. then “realized he was in trouble so he just
gave the bag of pills to Ms. Fernandez, as soon as she asked for them.”   

            Ms. Fernandez testified that
she was in the cafeteria on the morning in question.  When C.W.L. briefly got
up from the table where he was sitting, L.B. called her over to the table, told
her that C.W.L. had pills in his possession, and gave her two pills.  When she
picked up C.W.L.’s bag, several of the same type of pills fell off the bag onto
the floor.  She described the pills as “blue, small.  I believe they might have
been square with a little tip on it and a slash down the middle with numbers .
. . stamped in the middle of the letter.”  She immediately picked up the pills,
put them in a sandwich bag, and sealed them up.  She knew the pills were ADHD
medicine and that ADHD medications contain controlled substances.  She then
called security and Ms. Wright to come get C.W.L. and the pills.  She believed
she gave the pills to Ms. Wright.

            Ms. Wright testified that a
student told her that C.W.L. had pills in his wallet.  As a result, she called
Monica Tharpe, the School Resource Officer.  Ms. Wright testified that Officer
Tharpe told her to go look in C.W.L.’s wallet but that she did not.  Instead,
she went and got C.W.L. from the cafeteria and took him to the office.  After
she had left the office, Ms. Fernandez came running up the hallway and handed
her a small Ziplock bag that had three blue pills in it.  Ms. Fernandez told
her that she had found the pills in C.W.L.’s things and asked her to take them
into the office.  She then went into the office, handed the bag containing the
three pills to Helen Hernandez, the assistant principal, and told her that Ms.
Fernandez had given them to her to bring to the office.

            Ms. Hernandez testified that
Ms. Wright brought some pills into her office on May 25, 2007, but she did not
remember how many pills there were or if they were in some type of container or
bag.  She gave the pills to Officer Tharpe and said that she talked to C.W.L.
about the pills that day, but she did not remember the specifics of the
conversation.

            Officer Tharpe testified
that Ms. Wright contacted her by telephone and told her that C.W.L. had some
pills.  When Officer Tharpe later arrived at the school, she was notified that
C.W.L. was in Ms. Hernandez’s office.  Officer Tharpe then went to Ms.
Hernandez’s office and Ms. Hernandez gave the pills to her.  Officer Tharpe
testified that there were three pills and they were small and blue with the
letter “D” stamped on them.  She then investigated by taking statements.  She
interviewed L.B., C.S., and another student who had been sitting at the
cafeteria table with C.W.L. that morning.  She also took statements from Ms.
Fernandez and Ms. Wright and, at some point, performed a pat down search of
C.W.L.  Officer Tharpe ultimately determined that an offense had been committed
and arrested C.W.L.

When she later arrived at the sheriff’s
office, she logged the pills in as evidence in the property room and wrote a
report.  She testified that after she called Poison Control and described the
pills to the person who answered the phone, she determined that the pills were
“Foca something” and were a controlled substance.

            Detective Dusty Ford, an
investigator for the Johnson County Sheriff’s Department, testified that
Officer Tharpe informed him that she was going to be making an arrest and that
she had some pills that would need to be weighed and tested.  He met Officer
Tharpe at Juvenile Services with a set of digital scales so that they could
determine the approximate weight of the pills.  Detective Ford testified that
there were three blue pills, they “had the marking of a letter D on one side,”
and they weighed approximately four-tenths of a gram.  After the pills were
weighed, they would have been placed into evidence in the property evidence lockers. 
When the case was forwarded to him the next day, he used the 25th Anniversary
Nursing 2005 Drug Handbook published by Lippincott Williams and Wilkins to
identify the pills as Focalin.

            Detective Ford said that the
pills were sent to the Texas Department of Public Safety crime lab (DPS lab) in
Garland, Texas, for drug analysis and that it was determined there that the
pills contained a controlled substance.  The person who sent the response from
the DPS lab was Nick Grizzle.  Mr. Grizzle, a forensic scientist at the DPS lab
in Garland, Texas, testified that he received property involving case number
S0712278 from the Johnson County Sheriff’s Department on June 12, 2007.  Mr.
Grizzle testified that the evidence was submitted to the lab by “C. Norman.”  Detective
Ford said that Detective Cody Norman was the property custodian at the time the
offense in this case occurred.  

            Mr. Grizzle said that when
he opened the envelope containing the evidence, he found “a plastic sandwich
bag that contained three blue D-shaped tablets.”  He then used an Ident-A-Drug
reference book and determined that the pills were Dex-Methylphenidate HCL,
which is found in the prescription medication known by the brand name Focalin. 
Mr. Grizzle then tested the pills, consuming by test one whole pill in the
process, and “found that the tablets contained Methylphenidate with a weight of
0.45 grams.”  Mr. Grizzle then sealed the evidence back up in an envelope and
placed it into the DPS lab’s main vault until “the agency came and picked it
back up.”  

Detective Ford testified that on the
morning of trial, he received the plastic bag containing the remaining two pills
from the current evidence property custodian at the Johnson County Sheriff’s Department
and brought the evidence to the courtroom.  Mr. Grizzle identified the two
pills as the remaining two pills that were left over after his analysis at the
DPS lab.  Officer Tharpe also identified the two pills as the items that were
taken as evidence during the arrest of C.W.L. and the same pills that she
submitted into evidence in the property room of the Johnson County Sheriff’s
Department.

Discussion

            To prove that an accused unlawfully
possessed a controlled substance, the State must establish:  (1) the accused
exercised control, management, or care over the substance, and (2) the accused
knew the matter possessed was contraband.  Poindexter v. State, 153
S.W.3d 402, 405 (Tex. Crim. App. 2005).  Whether this evidence is direct or
circumstantial, “it must establish, to the requisite level of confidence, that
the accused’s connection with the drug was more than just fortuitous. . . .”  Id. at 405-06 (quoting Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim.
App. 1995)).  Previously, this was referred to as the “affirmative links”
rule.  See id.  However, the Court of Criminal Appeals has cautioned
against use of the term “affirmative links” as suggesting “an independent test
of legal sufficiency” and has chosen instead to use only the term “‘link’ so
that it is clear that evidence of drug possession is judged by the same
standard as all other evidence.”  Evans v. State, 202 S.W.3d 158, 162
n.9 (Tex. Crim. App. 2006).

The rule is designed to protect the
innocent bystander from conviction based solely upon his fortuitous proximity
to someone else’s drugs.  Poindexter, 153 S.W.3d at 406.  The rule
simply restates the commonsense notion that a person, such as a father, son,
spouse, roommate, or friend, may jointly possess property like a house but not
necessarily jointly possess the contraband found in that house.  Id.  Thus, “[w]hen the accused is not in exclusive possession of the place
where the substance is found, it cannot be concluded that the accused had
knowledge of and control over the contraband unless there are additional
independent facts and circumstances which affirmatively link the accused to the
contraband.”  Id. (quoting Deshong v. State, 625 S.W.2d
327, 329 (Tex. Crim. App. 1981)).

In his first issue, C.W.L. contends that
the evidence is legally insufficient to prove he delivered a controlled
substance in a drug free zone because the State “failed to produce any evidence
affirmatively linking [him] to the controlled substance tested by the
Department of Public Safety.”  The substance of this issue appears to be
twofold.  First, C.W.L. appears to argue that the evidence is legally
insufficient to support his conviction because the State failed to produce any
evidence that he exercised control, management, or care over the pills.  C.W.L.
points to the following facts in support of this contention:  “[t]he incident
allegedly occurred in a school cafeteria, crowded with students waiting for
classes to start”; Ms. Fernandez was the only adult monitoring the cafeteria
that morning, and “when she went to the table and gathered C.W.L.’s belongings,
C.W.L. was not at the table”; some of the pills were given to Ms. Fernandez by L.B.,
and the other pills were recovered after falling off the top of C.W.L.’s bag,
which “was accessible to every student wandering around the cafeteria that
morning”; C.W.L.’s bag was “easily accessible to L.B., who was sitting next to
it and who gave the other pills to Ms. Fernandez”; no one ever found any pills
in C.W.L.’s possession; and “[t]here was a great deal of conflicting testimony
about how the pills were recovered.” 

However, both L.B. and C.S. testified
that the pills that were recovered belonged to C.W.L. and that C.W.L. told them
the pills were his ADHD medicine.  Thus, a rational trier of fact could have
found beyond a reasonable doubt that C.W.L. exercised control, management, or
care over the pills.

            C.W.L. also contends that the
evidence is legally insufficient to support his conviction because the State
failed to prove that the pills L.B. and C.S. claimed to have seen in C.W.L.’s
possession were the same pills tested by the DPS lab.  C.W.L. does not,
however, assert that the pills were tampered with.  “Without evidence of
tampering, most questions concerning care and custody of a substance go to the
weight attached, not the admissibility, of the evidence.”  Lagrone v. State,
942 S.W.2d 602, 617 (Tex. Crim. App. 1997).  Moreover, in a legal sufficiency
review, we consider all the record evidence, regardless of its admissibility.  Powell
v. State, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).  Based on the evidence
as detailed above, the State sufficiently established that the pills L.B. and
C.S. claimed to have seen in C.W.L.’s possession were the same pills tested by
the DPS lab.  We overrule C.W.L.’s first issue.

            In his second issue, C.W.L.
contends that the evidence is legally insufficient because the State failed to
prove he knew the pills were a controlled substance.  C.W.L. maintains in his
brief that pills “do not have unique characteristics that would allow an
inference to be drawn regarding their status as a controlled substance.”  He
also points out that L.B. testified that C.W.L. never told him why he would
want the ADHD pills.  Both L.B. and C.S. testified that they did not know why
someone who did not have ADHD would want to take ADHD medicine, and Officer
Tharpe had to call Poison Control to confirm that the pills were a controlled
substance.

However, the State sufficiently
established that C.W.L. knew the pills were his ADHD medicine.  Cf. Hayes v.
State, 672 S.W.2d 246, 248 (Tex. App.—Beaumont 1984, no pet.) (holding that
an accused may be criminally liable for knowingly carrying a weapon even if the
accused did not know that the carrying of the weapon constituted an offense). 
Both L.B. and C.S. testified that C.W.L. told them the pills were his ADHD
medicine.  In fact, L.B. testified that although the pills were not in a
prescription bottle, C.W.L. said the pills were his prescribed ADHD
medicine and that C.W.L. tried to sell him two of the pills.  For this reason,
we conclude that a rational trier of fact could have found beyond a reasonable
doubt that C.W.L. knew the pills were a controlled substance and, therefore,
that he delivered a controlled substance in a drug-free zone.  We overrule
C.W.L.’s second issue.

Conclusion

            Having overruled C.W.L.’s
two issues, we affirm the trial court’s judgment.

 

REX D. DAVIS

Justice

 

Before
Chief Justice Gray,

Justice Reyna, and

Justice Davis

Affirmed

Opinion
delivered and filed July 29, 2009

[CV06]